UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RICKY MOUNGCHANH,

    Plaintiff,

      v.

CAROLYN COLVIN,

    Acting Commissioner of Social Security,

        Defendant.

Case No. C14-1540-RSM

ORDER ON SOCIAL SECURITY
DISABILITY

## I.    INTRODUCTION

Plaintiff, Ricky Moungchanh, brings this action pursuant to 42 U.S.C. §§ 405(g), and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits and Supplemental Security Income disability benefits, under Title II and Title XVI of the Social Security Act.  This matter has been fully briefed and, after reviewing the record in its entirety, the Court AFFIRMS the Commissioner's decision.

## II.    BACKGROUND

Plaintiff filed concurrent applications for Social Security Disability Insurance (SSDI) and Supplemental Security Income disability benefits (SSI), alleging disability beginning August 20, 2011, due to a combination of physical impairments and pain.  Tr.  63.  Plaintiff's

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 1

claims were denied initially and on reconsideration.  Tr. 14, 62-81.  On December 13, 2012, ALJ Virginia M. Robinson held a hearing in Seattle Washington, taking testimony from Plaintiff and a vocational expert ("VE").  Tr. 28-61.  Plaintiff was represented by counsel, Sandra E. Widlan.  Tr. 14, 28.   On March 22, 2013, the ALJ found Plaintiff not disabled.  Tr. 14-23.  Specifically, the ALJ found that Mr. Moungchanh's impairments did not meet or equal a Listing, and that he had the residual functional capacity ("RFC") to lift/carry up to twenty pounds occasionally and ten pounds frequently, and stand/walk up to two hours and sit up to six hours of an eight hour day with the opportunity to change positions at least briefly every hour.  Tr. 19.  While the ALJ found that Mr. Moungchanh could no longer perform his past relevant work as fast food worker, cafeteria worker, or assistant manager, she did find that he could perform other work existing in the national economy.  Tr. 22-23.

On April 18, 2013, Plaintiff requested administrative review of the ALJ's decision, and on August 19, 2014, the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review.  Tr. 1-7.  Plaintiff timely filed this judicial action.

### III.   JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

### IV.   STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## V.  EVALUATING DISABILITY

As the claimant, Mr. Moungchanh bears the burden of proving that he is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is

expected to last, for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).   A claimant is disabled under the Act only if his impairments are of such severity that he is unable to do his previous work, and cannot, considering his age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.   42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.   *See* 20 C.F.R. §§ 404.1520, 416.920.   The claimant bears the burden of proof during steps one through four.   At step five, the burden shifts to the Commissioner.   *Id.*   If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.   Step one asks whether the claimant is presently engaged in "substantial gainful activity" (SGA).   20 C.F.R. §§ 404.1520(b), 416.920(b). [1]   If he is, disability benefits are denied.   If he is not, the Commissioner proceeds to step two.   At step two, the claimant must establish that he has one or more medically severe impairments, or combination of impairments, that limit his physical or mental ability to do basic work activities.   If the claimant does not have such impairments, he is not disabled.   20 C.F.R. §§ 404.1520(c), 416.920(c).   If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.   20 C.F.R. §§ 404.1520(d), 416.920(d).   A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.   *Id.*

---

[1] Substantial gainful employment is work activity that is both substantial, *i.e.*, involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R § 404.1572.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 4

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the Commissioner evaluates the physical and mental demands of the claimant's past relevant work to determine whether he can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is able to perform his past relevant work, he is not disabled; if the opposite is true, then the burden shifts to the Commissioner at step five to show that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the claimant is unable to perform other work, then the claimant is found disabled and benefits may be awarded.

## VI.    ALJ DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Mr. Moungchanh had not engaged in substantial gainful activity since August 20, 2011, the alleged onset date.  Tr. 14.

**Step two:** Mr. Moungchanh had medical impairments that caused more than a minimal effect on his ability to perform basic work activities.  Specifically, he suffered from the following "severe" impairments: osteoarthritis of the knees, diabetes mellitus type II, obesity, and hepatitis B.  Tr. 16.

**Step three:** These impairments are not severe enough to meet the requirements of any listed impairment in Appendix 1, Subpart P, Regulations No. 4.  Tr. 18.

**Residual Functional Capacity:** Mr. Moungchanh had the RFC to lift/carry twenty pounds occasionally and ten pounds frequently.  He can stand/walk up to two hours and sit up

---

[2] 20 C.F.R. §§404.1520, 416.920.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 5

to six hours in an eight hour work day with normal breaks.  He can occasionally stoop, crouch, and climb ramps and stairs.  He can never kneel, crawl, or climb ladders, ropes, or scaffolds. Mr. Moungchanh must avoid excessive vibrations and even moderate exposure to workplace hazards.  Finally, he must be able to change his position at least briefly every hour.  Tr. 19.

**Step four:** Mr. Moungchanh was unable to perform his past relevant work as a fast food worker, assistant manager, food service employee, cafeteria worker, short order cook, or cashier.  Tr. 22.

**Step five:** An individual with Plaintiff's age, education, work experience, and RFC could work in a significant number of jobs in the national economy, such as injection molding machine operator, plastic computer board inspector, and house sitter; therefore, he was not disabled.  Tr. 22-23.

## VII.    ISSUES ON APPEAL

Plaintiff challenges the ALJ's rejection of his testimony, evaluation of the medical opinion of his treating physician Dr. Soung, failure to develop the record as to his anxiety and depression, and consideration of the lay witness evidence from his family.  Mr. Moungchanh also argues that the ALJ erred at step five of her evaluation by failing to meet her burden of showing there were other jobs in the national economy that he could perform, and that additional evidence submitted to the Appeals Council shows that the ALJ's decision was not supported by substantial evidence.

## VIII.   DISCUSSION

### A.  The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).   The Court should not "second-guess" this credibility

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 6

determination.  *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984).  In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence.  *See id*. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id*.; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  *Lester*, 81 F.3d at 834.

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  *Smolen*, 80 F.3d at 1284.  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  *See id*.

The ALJ found that not all of Plaintiff's symptom allegations were credible because the record showed improvement over time due to treatment and that his activities indicate that his pain is not as significant as alleged.  Tr.  19-20.  Plaintiff contends that the ALJ failed to provide clear and convincing reasons to reject his testimony.  According to Plaintiff, the ALJ minimized the severity of his right knee impairment, incorrectly determined that his knee

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 7

improved with treatment, and failed to demonstrate activities that reasonably contradict his testimony or were transferable to a work setting.  Dkt. 16 at 5-7.

Plaintiff argues the ALJ's interpretation of the medical evidence in arriving at the conclusion that he only suffered from moderate right knee osteoarthritis.  Tr. 20.  Plaintiff is correct that the record includes medical evidence that his knee impairment may be more properly characterized as moderate to severe osteoarthritis.  A February 2011 examination by Dr. Nelson Hagar concluded that Plaintiff had moderate to severe osteoarthritis.  Tr. 302.  In October 2011, Dr. Jordan Chun concluded that Plaintiff's right knee had advanced medial and mild to moderate patella femoral pathophysiology.  Tr. 381.  Dr. Peter Verdin described Plaintiff's right knee as "essentially bone on bone contact in the medial compartment," and recommended total knee replacement during a consultation in June 2012.  Tr. 510.

These medical opinions seem to reflect a more severe impairment that would support Plaintiff's allegations of disabling pain.  However, the ALJ properly focused on the knee impairment's impact on Plaintiff's functional ability, rather than the technical medical jargon found in the treatment record.   Substantial evidence in the record supports the ALJ's finding that treatment resulted in improvement.

Beginning in mid-2012, the medical treatment records show significant improvement in Plaintiff's level of pain.   In May 2012, Plaintiff reported increased pain in his knee and requested Euflexxa injections after prior treatment resulted in four months of relief.  Tr. 522.  He received the injections in June 2012.  Tr. 507.  A month later, Plaintiff attended an event, the Bite of Seattle, in which he was successfully able to walk and sit for four to five hours.  Tr. 480.  A subsequent medical visit included complaints of blisters and skin irritation from his knee brace, but no complaints of pain.  Tr. 480.  During an August 2012 appointment with Dr.

Soung, Plaintiff reported that he "[h]as pain during the day but is doing a lot of other things so he is easily distracted." Tr. 476. He complained of knee pain a couple of nights a week and requested pain medication to "occasionally" take at bedtime. Tr. 476. Dr. Soung prescribed gabapentin and approved occasional use of Vicodin. Tr. 475. However, at an October 2012 follow-up appointment, Plaintiff told Dr. Soung that he had never started taking the gabapentin for pain and had "rare" vicodin use of approximately two tablets per month. Tr. 450. He also reported that "he doesn't actually find the pain overly bothersome." Tr. 450.

This minimal need for pain medication illustrates Plaintiff's positive response to treatment. This improvement with treatment is properly considered as evidence of persistence and intensity of symptoms, including pain. 20 C.F.R. §§ 404.1529(c)(3)(iv), (v), 416.929(c)(3)(iv, (v). Here, Plaintiff's comments to his doctor show improvement with treatment that contradicts his allegations of disabling pain. Additionally, the need for only conservative treatment "is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007). Plaintiff's report that his pain was not overly bothersome and only necessitated "rare" use of Vicodin conflicts with his testimony and suggests that his pain does not cause disabling limitations.

Plaintiff also reported activities inconsistent with his alleged disability. The clearest example of such activity was Plaintiff's attendance of the Bite of Seattle in which he spent four to five hours walking and sitting. Tr. 480. While Plaintiff experienced blisters and skin irritation related to his knee brace, he did not complain of knee pain as a result of the exertion. Tr. 480-81. The ALJ reasonably considered this as evidence of Plaintiff's improvement and functional ability. Tr. 20. While Plaintiff urges interpretation of this as evidence that "this

amount of walking was not the norm for him," we will uphold the ALJ's rational interpretation. *See Thomas*, 278 F.3d at 954.

Plaintiff's activity and improvement are clear and convincing reasons to discredit Plaintiff's allegations of disabling pain. The record provides substantial evidence of Plaintiff's response to knee injections resulting in pain that was not "bothersome" and required little pain medication. Therefore, the Court upholds the ALJ's credibility determination.

**B.  The ALJ's Assessment of the Medical Evidence**

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. *Sample*, 694 F.2d at 642. In such cases, "the ALJ's conclusion must be upheld." *Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." *Id*. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes*, 881 F.2d at 755.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 10

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating physician. *Lester*, 81 F.3d at 830. Even when a treating physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id*.; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

Mr. Moungchanh contends that the ALJ did not provide sufficient reason to reject the opinion of his treating physician, Michael Soung, M.D. Dkt. 16 at 1. Dr. Soung provided an evaluation of Plaintiff's physical impairments and opined that Plaintiff could sit for prolonged periods with occasional pushing and pulling of arm or leg controls and could sit for most of the day with brief periods of walking or standing. Tr. 423-24. He also assessed that Plaintiff could lift and carry a maximum of twenty pounds, and frequently lift or carry ten pounds. Tr. 423. Dr. Soung's treatment notes from the time of this physical evaluation indicate that Plaintiff could probably lift more weight off a table when squatting would not be required. Tr. 425. The treatment record also includes that Plaintiff "is unable to stand from a seated position without the use of his hands….and is unable to sit without using his hands or just falling into the chair." Tr. 429. The ALJ gave significant weigh to Dr. Soung's assessment based on the treatment relationship and the opinion's consistency with his medical examinations and Mr. Moungchanh's reported activities. Tr. 21. Plaintiff contends that the ALJ failed to provide a specific and legitimate reason to reject Dr. Soung's finding that he was unable to stand from a

seated position without the use of his hands or sit without either using his hands or falling into a chair.  Dkt. 16 at 12.

Despite Plaintiff's contention, the ALJ did not reject Dr. Soung's observations concerning Plaintiff's ability to sit and stand.  Rather, the ALJ omitted discussion of the specific finding, which is not necessarily error.  *See Vincent*, 739 F.3d at 1394-95.  The ALJ must only explain the rejection of significant probative evidence.  *Id*.  Here, Dr. Soung's finding was a point of consideration for assessing physical capacity, rather than a specific work-related limitation or medical opinion requiring acceptance or rejection by the ALJ.   Therefore, the specific finding that Plaintiff had difficulties transitioning between sitting and standing was not significant or probative.

Dr. Soung's notes, including the sit/stand difficulties, were written in conjunction with the physical examination to complete the disability paperwork.  Tr. 423-25.   Dr. Soung presumably considered Plaintiff's difficulties transitioning between standing and sitting when assessing the physical capacity assessed in the paperwork.  As a result, the ALJ could logically infer that these difficulties informed Dr. Soung's opinion that Plaintiff could sit for prolonged periods or most of the day with brief periods of standing/walking.   Such an inference is permissible.   *See Sample*, 694 F.2d at 642.  The ALJ considered Dr. Soung's opinion, as a whole, which took Plaintiff's sit/stand limitations into account.  There is no error.

**C.  Duty to Develop the Record on Mental Impairments**

The ALJ found that Plaintiff's alleged anxiety and depression were not medically determinable impairments.  Tr. 17.  The ALJ determined that while Plaintiff had experienced symptoms of chest pain, shortness of breath, and dizziness that had been treated as anxiety, there is no diagnosis of mental impairment in the record.  Tr.  17.  Plaintiff claims that the

record shows that he suffered from panic attacks and was taking Zoloft as treatment for stress/depression. Dkt 16 at 13-14. According to Plaintiff, this evidence should have led the ALJ to supplement the record by seeking a consultative psychological examination under 20 C.F.R. §§ 404.1519a, 416.919a.

In a Social Security case, the ALJ has an independent duty to fully and fairly develop the record so that a claimant's interests are considered. *Smolen*, 80 F.3d at 1288. Ambiguous evidence or the ALJ's determination that the record is inadequate triggers the ALJ's duty to conduct an appropriate inquiry. *Tonapetyan*, 242 F.3d at 1150. Here, the ALJ found that the lack of medical diagnosis was adequate to determine that Plaintiff did not have a determinable mental impairment.

The Plaintiff has the burden of proving the existence of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1508(a), 416.905(a). An impairment is established by medical evidence consisting of signs, symptoms, and laboratory findings. 20 C.F.R. §§ 404.1508, 416.908. Here, the ALJ found that the record only contained a treatment note but no diagnosis supporting the existence of a mental impairment.

The record shows several references to anxiety and depression from Plaintiff and his family. He reported a diagnosis of panic attacks and treatment with Zoloft. Tr. 237, 243, 245. His family members stated that he had become depressed. Tr. 252, 253-55. However, the medical records only contain a few references to anxiety or depression from medical sources generally showing that Plaintiff was taking Zoloft for stress/depression. Tr. 426, 428, 477. None of the records include a specific diagnosis.

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 13

The medical evidence that Plaintiff suffers from anxiety or depression is sparse, at best. Rather than concluding that this evidence, or lack thereof, raised ambiguity or concerns about the inadequacy of the record, the ALJ concluded that Plaintiff had not satisfied the burden of demonstrating a medically determinable mental impairment.  This is a reasonable interpretation and will not be disturbed on appeal.  *Thomas*, 278 F.3d at 954.

**D.  Additional Evidence Before the Appeal Council**

Plaintiff submitted additional evidence to the Appeals Council for consideration, including an x-ray study of his lumbar spine showing some degenerative changes.  Plaintiff contends that this evidence, accepted as part of the record by the Appeals Council, should be considered by the Court when determining whether the ALJ's decision is supported by substantial evidence.

This Court must consider this new evidence in its review.  *Brewes v. Comm'r of Soc. Sec.*, 682 F.3d 1157, 1163 (9th Cir. 2012).  The evidence has been considered as part of the Administrative Record. However, Plaintiff has not put forth any argument as to how this evidence would materially impact the ALJ's findings or decision.  Therefore, this argument is waived and will not be discussed.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n. 2 (9th Cir. 2008) (declined to address argument lacking specificity in the briefing).

**E.  Step Five Analysis**

As noted above, if a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do.  *See Tackett,* 180 F.3d at 1098-99; 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e).  The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines (the "Grids").  *Tackett*, 180 F.3d at 1100-1101; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2000).

Plaintiff asserts that the ALJ did not meet her burden at step five because the hypothetical posed to the VE did not accurately reflect his actual limitations. Dkt. 16 at 15. This is merely a restatement of the previously addressed arguments concerning the properly discounted evidence. As a result, no error is established. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-6 (9th Cir. 2008).

**F. Additional Issues**

Plaintiff's briefing includes two additional issues concerning lay witness evidence and the deviation of VE testimony from the Dictionary of Occupational Titles ("DOT") on the details of the representative occupation of house sitter.  Dkt. 16 at 10-12, 14.  Plaintiff raises these issues without assigning error to them.  As noted in this Court's scheduling order, failure to assign error results in waiver.

> Beginning on page one, plaintiff shall list the errors alleged (for example, "Issue No. 1 – The ALJ failed to properly evaluate plaintiff's subjective complaints of pain."), followed by a clear statement of the relief requested. A general statement of an issue, such as "the ALJ's decision to deny benefits is not supported by substantial evidence," is unacceptable. Assignments of error that are not listed in this section of the opening brief will not be considered or ruled upon.

Dkt. 13 at 2.  Plaintiff has not complied with this order with respect to the lay witness evidence and the VE's alleged deviation from the DOT.  As a result, these issues have been waived.

//

//

//

//

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 15

### IX.   CONCLUSION

For the foregoing reasons, the Court hereby finds that the ALJ properly concluded Plaintiff was not disabled.  Accordingly, Defendant's decision to deny benefits is AFFIRMED.

DATED this 23rd day of July 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE

ORDER ON SOCIAL SECURITY DISABILITY, PAGE - 16